# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LARRY WASHINGTON #407448          *

     Plaintiff          *

v.          *          Civil Action No. GLR-13-03767

GARY D. MAYNARD, *et al.*          *

     Defendants          *

...o0o…

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT OF THE SECOND AMENDED COMPLAINT

Gary D. Maynard, former Secretary of the Department of Public Safety and Correctional Services ("the Department"), Marion Tuthill, former Warden, Baltimore City Detention Center ("BCDC"), Correctional Captain Karen Moore ("Captain Moore"), Sergeant Michael Porter ("Sgt. Porter") and Correctional Officer Andrene Ffowlkes ("CO Ffowlkes"), defendants,[1] through their attorneys, Brian E. Frosh, Attorney General of Maryland, and Laura Mullally, Assistant Attorney General, and pursuant to Fed. R. Civ. P. 12(b)(6) and 56 (a), submit this memorandum in support of their motion to dismiss and/or for summary judgment of the Second Amended Complaint ("Second Amended Complaint"), ECF No. 36, and state:

---

[1] This memorandum uses the phrase "defendants," or "all defendants" to include former Secretary Maynard, former Warden Tuthill, Captain Moore, Sgt. Porter, and CO Ffowlkes.  Defendants Shavella Miles and Anika Beverly have not been served with a summons and a complaint, are not represented by undersigned counsel; thus, this motion this motion is not submitted on behalf of those defendants.

# I.     SUMMARY OF THE CASE

Plaintiff Larry Washington has filed a six count Second Amended Complaint against the former Secretary and four current or former officials or employees of BCDC.  In his complaint, Plaintiff alleges violations of federal civil rights law and State tort law in connection with the defendants' alleged failure to protect him from assault by fellow inmates during his confinement at BCDC in 2012.  Plaintiff has sued the defendants in their individual capacities.

## A. Federal Law Claims

Plaintiff has brought suit against all defendants under 42 U.S.C. §1983.  In Counts I, II, and III of the Second Amended Complaint, Plaintiff alleges personal and supervisory liability against the defendants and defendant supervisors for their alleged violations of his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution.  Specifically, in Counts I and II, Plaintiff alleges that all defendants violated the Eighth and Fourteenth Amendments by failing to reasonably protect Plaintiff by separating him from detainee Brandon Dovi after the two were housed on the same unit. Plaintiff alleges that all defendants were on notice that Brandon Dovi had previously attacked him, and that Dovi was threatening him again.  Plaintiff also alleges that he was denied medical treatment.  Second Amended Complaint, ¶¶50-59, 61-67.  In Count III, Plaintiff alleges supervisory liability against defendants Maynard, Tuthill, and Moore because they "possessed actual or constructive knowledge" that BCDC employees were "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury

to citizens like Mr. Washington," and either declined to relocate him, or were deliberately indifferent to his plight. Second Amended Complaint, ¶71.

## B.  State law claims

In addition to his federal claims, Plaintiff alleges that all defendants were negligent by failing to use reasonable care to protect his health and safety, and that the defendants intentionally inflicted emotional distress on him by failing to move him or fellow detainee Brandon Dovi to another housing unit.  Second Amended Complaint, ¶¶75-77, 87-88.   Plaintiff also contends that defendants Maynard, Tuthill and Moore were negligent in the hiring, supervision and retention of Sgt. Porter and CO Ffowlkes, who allegedly "flout[ed]" their duty to keep Plaintiff free from attack, by permitting Plaintiff and Brandon Dovi to remain on the same housing unit.  Second Amended Complaint, ¶¶ 81-84.   He also alleges that the supervisors' negligence in hiring, supervising, and retaining Sgt. Porter and CO Ffowlkes was the proximate cause of his injuries.  *Id.*, ¶84.

## II. STANDARD OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss under Rule 12(b) (6) for failure to state a claim should be granted when "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal quotations omitted).  This Court should accept "as true all of the well-pleaded allegations and [view] the complaint in the light most favorable to the non-moving party."  *Lesueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012).  This Court, however, may disregard conclusions of law or

3

unwarranted deductions of fact because the purpose of a Rule 12(b)(6) motion is to determine the legal sufficiency of the complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) provides that "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must allege something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

### B. Motion for Summary Judgment

Summary judgment is proper if the pleadings, discovery and documents in the record, and any affidavits, show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element … necessarily renders all other facts immaterial." *Id.* at 323. Thus, on those issues on which the nonmoving party will have the burden of proof,

it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256. A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Catrett,* 477 U.S. at 322. A federal district court has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). A "complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial," and necessitates summary judgment for the defendant. *Catrett*, 477 U.S. at 323. Although the court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995), all inferences must be firmly based upon established facts. *Carroll v. United Steel Workers of America*, 498 F. Supp. 976, 978 (D. Md.), *aff'd*, 639 F.2d 788 (4th Cir. 1980).

## II.     ARGUMENT

### A. Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e (2000 ed.).

Defendants are entitled to summary judgment under all counts of the complaint because Plaintiff has failed to exhaust his administrative remedies as required by the PLRA. All of Plaintiff's claims arise directly from his conditions of confinement as a pretrial detainee at BCDC. Second Amended Complaint. Plaintiff alleges that the defendants violated the U.S. Constitution by failing to protect him from harm at BCDC, acted with negligence, and intentionally inflicted emotional distress upon the Plaintiff

arising from his detention at BCDC.  *Id*., Counts I, II, IV, VI.  Plaintiff further alleges that the supervisory defendants are liable for constitutional violations under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978), and for negligently hiring, supervising, and retaining the subordinate defendant employees at BCDC.  Second Amended Complaint, Counts III, V.

The PLRA requires a prisoner, which includes a pretrial detainee, to properly exhaust all available administrative remedies prior to the filing of an action challenging his conditions of confinement.  42 U.S.C. §1997e (a) – (h); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2008) (requiring "proper" exhaustion of administrative remedies); *Moore v. Bennette,* 517 F. 3d 717, 724 (4th Cir. 2005) (discussing "availability" of administrative remedies).  The exhaustion requirement is mandatory, *see Anderson v. XYZ Correctional Health Services, Inc.,* 407 F. 3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involved general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Under the PLRA,

"[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  As the Court explained in *Woodford*, the reasons for the exhaustion requirement are twofold:  it gives an agency such as BCDC the opportunity to correct its own mistakes before being "haled into federal court," and it promotes efficiency before administrative agencies.  *Woodford,* 548 U.S. at 88.  *Woodford* also makes clear that "proper exhaustion

of administrative remedies … means using all steps that agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (citation omitted) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford,* 548 U.S. at 89.

BCDC maintains a four step grievance process as outlined in Division of Pretrial Detention and Services ("DPDS") Directive 180-1. *See* Declaration of Kelvin Harris, Director of Standards, Compliance and Litigation for DPDS, attached hereto as defendants' Exhibit A. Plaintiff has not exhausted a single administrative remedy that references any of the allegations in the Second Amended Complaint. *Id.* Consequently, defendants are entitled to judgment because Plaintiff has failed to exhaust his administrative remedies under the PLRA.

Although Plaintiff filed a series of Step I grievances during his detention at BCDC, none of these grievances was connected with his alleged injury or any of the allegations of the Second Amended Complaint. The first set of grievances, filed in November and December of 2011, arose *before* the alleged attack upon Plaintiff by Brandon Dovi and gang members. The grievances raised payroll and employment issues arising from Plaintiff's institutional job. *See* payroll and employment grievances, attached as Attachment 6 to Exhibit A.

The second type of grievance was filed after Plaintiff was allegedly attacked by Brandon Dovi and hospitalized, but again did not address the allegations Plaintiff now raises in his complaint. Instead, the grievance, signed by Plaintiff and checked off as a

"Property or Clothing" grievance, claimed that Plaintiff's personal property had been packed up after his injury, but not returned to him.  *See* property grievance, attached as Attachment 2 to Exhibit A.  The grievance is marked across the top:  "URGENT REQUEST."  *Id.*  The grievance states that Plaintiff "would like someone to be held accountable for my property."  *Id.*  Although Plaintiff stated in the grievance that he "was stabbed in [his] eye," he did not make any claim of wrongdoing on the part of BCDC staff in connection with the injury, did not seek redress against staff or the agency for the injury, and instead limited his claim to property issues.  Plaintiff's property grievance was investigated by BCDC staff, resulting in Plaintiff's reimbursement for his commissary items.  Attachment 2 to Exhibit A.

The Step I grievance form, which permits categorization of grievances through a checklist located at the top of the first page, confirms that Plaintiff had a remedy available to him for the claims raised in this action, and that he failed to exhaust that remedy by solely grieving the issue of his personal property.  *See* Attachments 2 and 6, attached to Exhibit A.  Plaintiff categorized his August 6, 2012 grievance as a "Property or Clothing" grievance, and not one of "complaints against staff or others," or a grievance categorized as "Other" with a blank section to be completed by the grievant. Although Plaintiff had the right and the opportunity to grieve each and every wrong alleged in the Second Amended Complaint, Step I grievances attached to Exhibit A demonstrate that although fully aware of the administrative remedy process at BCDC, Plaintiff elected only to pursue his property grievance.  There can thus be no doubt that Plaintiff failed to exhaust his administrative remedies at any stage on any of his claims in this lawsuit.

Because Plaintiff never raised the issues within his complaint through the available grievance process at BCDC, the former Warden or other officials had no opportunity to correct any institutional "mistakes" prior to the filing of this judicial complaint. *See Woodford,* 548 U.S. at 88.   There was also no opportunity for an efficient resolution of the conditions of confinement issues through the administrative remedy process. *Id.*  Nor did Plaintiff "properly" use *any* of the "steps that the agency holds out," allowing BCDC to "address the issues on the merits." *Id.,* at 90.   Accordingly, the defendants are entitled to summary judgement.

Nor may Plaintiff plausibly claim that BCDC's administrative remedies were unavailable to him.  Although the party raising the affirmative defense of failure to exhaust administrative remedies carries the burden of proof as to that issue, *Anderson v. XYZ Correctional Health Services, Inc.,* 407 F.3d at 676, where the existence of a grievance procedure extended to the inmate is established, the burden to show that the procedure was actually unavailable rests with the inmate. *See Graham v. Gentry,* 413 F. App'x 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.").  The fact that Plaintiff did file a grievance with regard to his property, which was addressed through the institution's administrative remedy procedure, demonstrates that a remedy was available to him for the claims he raises in his complaint.  Because he failed to raise those claims through the administrative process, this Court should grant summary judgment to the defendants.

This Court's grant of summary judgment should include Plaintiff's claims under Maryland law as well as his federal claims.   Exhaustion of administrative remedies applies to all claims, not merely the Federal civil rights claims, because §1997e requires the exhaustion of any claim brought "with respect to prison conditions under … 42 U.S.C §1983, *or any other Federal law. . . .*" 42 U.S.C. §1997e(a) (emphasis added).   Plaintiff's state law claims are brought under another Federal law, 28 U.S.C. §1367, the supplemental jurisdiction statute.   Therefore, they must be exhausted.   *See Hartsfield v. Vidor,* 199 F.3d 305, 309 (6th Cir. 1999) (requiring exhaustion "under the plain language of §1997e" of a prisoner's state law claim brought under diversity statute because that statute "is a law passed by Congress and any claims concerning prison conditions brought under any federal law must first be exhausted.").   Because Plaintiff failed to exhaust those claims, summary judgment should be granted to the defendants under all counts of the complaint.

## B.  The Eighth Amendment claim must be dismissed as a matter of law.

Because Plaintiff was a pretrial detainee at the time of the occurrences alleged in the complaint, his claims are not measured by the Eighth Amendment proscription against cruel and unusual punishment, but by the substantive due process clause of the Fourteenth Amendment.   *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *see also Belcher v. Oliver,* 898 F.2d 32, 33 (4th Cir. 1990); *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir. 1988).   However, the principles are essentially the same as those that apply to the Eighth Amendment claims raised by convicted inmates.   *Riley v. Dorton,* 115 F. 3d

1159, 1166-67 (4th Cir. 1997), *abrogated on other grounds*, *Wilkins v. Gaddy,* 559 U.S. 34 (2010).

Here, all of the occurrences of the Second Amended Complaint arose during Plaintiff's detention at BCDC.  Plaintiff was not transferred to the Division of Correction ("DOC") to serve his current term of confinement until after the date of the alleged incident.  Second Amended Complaint, ¶13.  Thus, Plaintiff's claims under the Eighth Amendment are barred as a matter of law, and Count I should be dismissed.

**C. Plaintiff has failed to state a claim against former Secretary Maynard under 42 U.S.C. §1983.**

It is well settled that there is no *respondeat superior* liability under § 1983.  *See Monell*, 436 U.S. at 658.  Therefore, supervisory correctional officials can be held liable only for their own personal wrongdoing or for supervisory actions that themselves violate constitutional norms.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 929 (4th Cir. 1977).  Plaintiff's complaint fails to state a claim against former Secretary Maynard under either theory of supervisory liability.

**1.  Plaintiff has failed to state a claim against the former Secretary, the former Warden and Captain Moore for any personal actions with regard to any of the allegations of the complaint.**

The Second Amended Complaint makes no allegations of any personal actions whatsoever by the former Secretary, the former Warden and Captain Moore that would state a claim for a violation of plaintiff's rights under the Fourteenth Amendment.  The Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), and the Fourth Circuit in *Taylor v. Freeman*, 34 F.3d 266, 271 (4th Cir. 1994), articulated the legal principles

governing a prisoner's Eighth Amendment failure to protect claim.  In order to succeed on such a claim, a prisoner must prove that the defendant (i) had knowledge of a substantial and pervasive risk of serious harm and (ii) acted with deliberate indifference, a criminal recklessness standard, to the prisoner's safety.

The Supreme Court expressly rejected application of an objective test that would hold a defendant liable if he or she should have known of a risk of harm.  *Farmer*, 511 U.S. at 837.  The Court explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. Thus, for liability to attach, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.  See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) ("actual knowledge of facts from which a reasonable person might have inferred the existence of the substantial and unique risk to Rich . . . not enough to establish a violation of the Eighth Amendment  . . . [because] . . . the defendant official  . . . must actually have drawn the inference").

It follows that mere negligence alone is insufficient to constitute a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  *Ruefly v. Landon*, 825 F.2d 792, 793 (4th Cir. 1987).  The defendant's conduct must involve more than lack of due care for the prisoner's safety in order to violate the Eighth Amendment, because "[i]t is obduracy and wantonness, not inadvertence or error in good faith that characterize the prohibited conduct." *Whitley v. Albers*, 417 U.S. 312, 319 (1986).

Plaintiff's allegations against former Secretary Maynard fall far short of this standard.  Although Plaintiff generally alleges that the former Secretary was responsible for "the operation and implementation of policies pertinent" to BCDC, Second Amended Complaint, ¶ 14, and that the former Secretary possessed actual or constructive knowledge that his subordinates at BCDC were engaged in conduct that created a risk of constitutional injury to "citizens like Mr. Washington," *id*., ¶ 70, there are no allegations within the Second Amended Complaint that the former Secretary was aware of any substantial and pervasive risk of serious harm to Plaintiff, let alone that he acted with deliberate indifference to such risk.  The Second Amended Complaint does not allege that Plaintiff complained about his personal safety to the former Secretary, or made a request of the former Secretary to be moved to another housing unit, or that the former Secretary had any knowledge of Plaintiff whatsoever via reports through the chain of command. Therefore, Count III of the Second Amended Complaint should be dismissed as to the former Secretary because Plaintiff has failed to state any facts alleging personal wrongdoing or deliberate indifference on the part of the former Secretary.

Similarly, Plaintiff has failed to allege any personal wrongdoing on the part of the former Warden and Captain Moore that satisfied the high legal burden of deliberate indifference.  Knowing of a risk of harm is insufficient.  Plaintiff fails to assert that the former Warden and Captain Moore drew any inference of an excessive risk to Plaintiff's health and safety from what little they allegedly knew.  Therefore, Count III of the Second Amended Complaint should be dismissed as to the former Warden and Captain Moore.

**2.    Plaintiff has failed to state a claim of supervisory liability against the former Secretary, the former Warden and Captain Moore under 42 U.S.C. §1983.**

Plaintiff has also failed to allege facts setting forth a claim of supervisory liability against former Secretary Maynard under § 1983.  To establish such a claim, a plaintiff must show

> (1)     that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2)     that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
>
> (3)     that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Randall v. Prince George's County,* 302 F.3d 188, 206 (4th Cir. 2002) (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994)); *see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied sub nom. Reed v. Slakan,* 470 U.S. 1035 (1985).

The plaintiff carries a "heavy burden of proof" of establishing supervisory liability, *Slakan,* 737 F.2d. at 373, because he  must demonstrate that he faced a "pervasive and unreasonable risk of harm" from a "specified source," and that the supervisor's lack of action equaled deliberate indifference, or "'tacit authorization'" of the unconstitutional conduct.  *Id.* (quoting *Orpiano v. Johnson,* 633 F.2d 1096, 1101 (4th Cir. 1980)).

Deliberate indifference in this context is more than mere negligence. Rather, liability may be established "only in those situations in which there is a history of widespread abuse." *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir. 1983). Thus, "[a] single act or isolated incident is normally insufficient to establish supervisory inaction upon which to predicate §1983 liability." *Id.; see also Jones v. Murphy,* 470 F.Supp.2d 537, 546 (D. Md. 2007) ("The subordinate's conduct must be 'widespread' or, if not, it must have occurred 'on several different occasions.'") (quoting *Randall,* 302 F.3d at 206). *See also Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard - a showing of mere negligence will not meet it.").

Consequently, the analysis is not whether abuse is so widespread that knowledge of it can be imputed to supervisory personnel, but rather whether a fact-finder could reasonably infer from widespread abuse that the supervisor *in fact knew of the abuse*, and could then reasonably conclude that continued inaction constituted deliberate indifference. Thus, for instance, "[d]eliberate indifference … may be satisfied by showing a supervisor's continued inaction in the fact of documented widespread abuses." *Randall,* 302 F.3d. at 204.

Plaintiff has failed to allege any facts to satisfy the "heavy burden," *Slakan,* 737 F.2d. at 373, required for stating a claim of supervisory liability against the former Secretary, the former Warden and Captain Moore. As noted, Plaintiff makes only conclusory allegations that Secretary Maynard "possessed actual or constructive knowledge" that BCDC employees "were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to Plaintiff. Second Amended Complaint, ¶

15

70. Accordingly, for this additional reason, Count III should be dismissed as to the former Secretary, the former Warden and Captain Moore.

## D. All defendants are entitled to governmental immunity on Count IV (Negligence).

As current or former State employees sued in the performance of their public duties, the defendants  are entitled to the protections of the Maryland Tort Claims Act ("MTCA"), and other applicable state law.  *See* Md. Code Ann. State Gov't ("SG") §12-101, *et seq*.  Section 12-105 of the MTCA provides that "state personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article."   SG § 12-105.   That section, in turn, gives State personnel immunity from suit and from liability for tortious conduct committed within the scope of their public duties so long as the act or omission "is made without malice or gross negligence," and the State or its units "have waived immunity under Title 12, subtitle 1 of the State Government Article. . . ."

Count IV accuses all defendants only of negligence.    Second Amended Complaint, ¶75.   The Second Amended Complaint contains no factual allegations of malice or gross negligence.   *Id.* ¶¶74-78.   "Actual malice" is defined as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.  *Lee,* 384 Md. at 268 (internal quotation marks and citations omitted).   "Gross negligence" has been defined as "a wanton or reckless disregard for human life or for the rights of others."   *Wells v. State,* 100 Md. App. 693, 703 (1994) (citations and quotation omitted).

Because Plaintiff does not allege malicious or grossly negligent conduct on the part of the defendants, and has otherwise failed to provide facts supporting any allegations of gross negligence or malice, the defendants are immune from suit under Count IV. Accordingly, that count should be dismissed with prejudice.

**E. Defendants Maynard, Tuthill and Moore are entitled to both governmental immunity and public official immunity for the allegations in Counts IV (negligence), and Count V (negligent hiring, supervision and retention).**

As stated above, the supervisory defendants enjoy statutory immunity under the MTCA for allegations of negligence. *Lee,* 384 Md. at 266. This includes the allegations of Count V, which allege the negligent hiring, supervision and retention of Sgt. Porter and CO Fowlkes.   Because this count is founded on alleged negligence, and contains no allegations of malice or gross negligence, it must be dismissed as to the supervisory defendants.

Moreover, as governmental agents, defendants Maynard, Tuthill and Moore are entitled to Maryland common law public official immunity as to Counts IV and V. "A government representative is entitled to public official immunity under the common law when he or she is acting as a public official, when the tortious conduct occurred while that person was performing discretionary rather than ministerial acts, and when the representative acted without malice." *Livesay v. Baltimore County,* 384 Md. 1, 12 (2004) (citation omitted). The former Secretary is a public official, appointed by the Governor to head of the Department. CS §2-102(a)(1), (2). The former Warden is a public official, appointed by the Commissioner of the Department of Pretrial Detention and Services to head BCDC. CS §5-402 (a), (c). As a correctional officer, Captain Moore is also public

official.  She acts "as an arm of the State, in keeping incarcerated those committed to imprisonment and in maintaining order in the prison." *Livesay,* 384 Md. at 12.

Public officials are "'not to be held liable civilly for damages resulting from mere negligence in the performance of duties.'"  *Id.,* at 13 (quoting *Carder v. Steiner,* 225 Md. 271, 275-76 (1961)).  Public official immunity is applicable to the non-intentional torts found in Counts IV and V of the Second Amended Complaint.  *Ashton v. Brown,* 339 Md. 70, 118 (1995).  Consequently, in addition to statutory immunity under the MTCA, defendants Maynard, Tuthill and Moore are entitled to common law public official immunity, and to the dismissal of Counts IV and V of the Second Amended Complaint.

**F.  Plaintiff has failed to state a claim upon which relief can be granted as to Count VI (Intentional Infliction of Emotional Distress).**

Count VI of the Second Amended Complaint, which alleges intentional infliction of emotional distress against all defendants, should be dismissed as to all defendants for failure to state a claim upon which relief can be granted.  In that count, Plaintiff alleges that all defendants acted "with extreme recklessness" by allowing Brandon Dovi to remain housed with Plaintiff at BCDC, and by ignoring Plaintiff's pleas to be relocated. Second Amended Complaint, Count VI.  First, Plaintiff makes no claim in the entirety of the Second Amended Complaint that the former Secretary was aware of Plaintiff's alleged housing difficulties, or that Plaintiff notified the former Secretary of the alleged danger presented to him by Brandon Dovi.  Moreover, Plaintiff does not allege any involvement by any of the defendants in the assault upon Plaintiff by Brandon Dovi and other detainees.

To establish a claim for intentional infliction of emotional distress, a complaint must show that:   1) the alleged conduct is intentional or reckless; 2) the alleged conduct is extreme and outrageous; 3) there is a causal connection between the wrongful conduct and the emotional distress; and 4) the emotional distress is severe.  *Harris v. Jones,* 281 Md. 560 (1977).

The pleading standards imposed by Maryland law for this tort are "stringent," and the elements "must be pled and proved with particularity."  *Silkworth v. Ryder Truck Rental,* 70 Md. App. 264, 271 (1987).  Liability will be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Ky. Fried Chicken Nat'l. Mgmt. Co. v. Weathersby,* 326 Md. 663, 670 (1992).  The underlying conduct must be of the type that "the average member of the community" will perceive as "a complete denial of the plaintiff's dignity as a person." *Dick v. Mercantile Safe,* 63 Md. App. 270, 276 (1985).  "The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung."  *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 59-60 (1986).

In essence, Plaintiff's claim for intentional infliction of emotional distress is founded on the allegation that the defendants, in defiance of "all ordinary logic," "ignored" Plaintiff's pleas to be moved away from Brandon Dovi.  Count VI, ¶¶ 87-88.  This count lacks the appropriate factual allegations to support any of the elements of this disfavored cause of action.  Similarly, Plaintiff has failed to allege facts demonstrating that he suffered a "'severely disabling emotional response.'"  *Tavakoli-Nouri v. State,* 139 Md.

App. 716, 728 (2000).  To satisfy the elements of the tort, the distress must be "'so severe that no reasonable man could be expected to endure it.'"  *Id.,* (quoting *Thacker v. City of Hyattsville,* 135 Md. App. 263, 315 (2000)).  Although Plaintiff alleges that he lost an eye in the attack, and suffered other long-term physical and emotional injuries, Second Amended Complaint at ¶¶89-90, Plaintiff has not alleged that he cannot function or tend to necessary matters.  *Hamilton,* 66 Md. App. at 61.  Recovery under the tort "will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves."  *Id.*  Because Count VI fails to meet this high legal standard, it must be dismissed.

**G. The Second Amended Complaint is moot and fails to state a claim as to denial of medical care as to any of the defendants.**

Plaintiff alleges in Counts I and II that he has been denied medical treatment in the form of a prosthetic eye, despite a 'recommendation' that he receive this medical device from an outside medical provider.  Although Plaintiff does not appear to bring a separate claim of denial of medical care against the defendants, instead asserting that he "has suffered harm in the form of denied medical treatment" as a result of the alleged wrongdoing of defendants, Second Amended Complaint, ¶ 67, any such claim would fail.

It is well settled that to state a claim for denial of medical care under the Eighth Amendment, a prisoner must allege facts from which a trier of fact could find that the defendants' acts or failures to act amounted to deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  As in other Eighth Amendment contexts, there are two components to this test: an objective component, *i.e.*, serious

medical need; and a subjective component, *i.e.*, deliberate indifference.  *See, e.g.,*
*Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Brice v. Virginia Beach Med.*
*Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995). In other words, as the Fourth Circuit has stated,
"in order to establish a claim of deliberate indifference to medical need, the need must be
both apparent and serious, and the denial of attention must be both deliberate and without
legitimate penological objective." *Grayson*, 195 F.2d at 695.

The Department has long employed a contractual health care provider to provide
medical care to inmates confined in Department correctional institutions.  *See* Declaration
of Sharon Baucom M.D., attached hereto as defendants' Exhibit B.   Until July, 2012,
medical care was contractually provided to BCDC detainees by Corizon, Inc. (formerly
CMS, Inc.).  *Id.*  Thereafter, medical care has been contractually provided to pretrial
detainees by Wexford Health Services, Inc.  *Id.*  Plaintiff was approved for a prosthetic
eye on May 16, 2014.  *Id.*  He attended several appointments for the creation of the
prosthesis after that date, and received his prosthetic eye on February 11, 2015.  *Id.*

Plaintiff provides no support for any claim that any of the defendants denied him
appropriate medical care in violation of the Eighth Amendment.  This claim additionally
is moot because Plaintiff has been fitted for and has received his prosthetic eye.
Accordingly, Plaintiff's claims of denial of medical care should be dismissed.

### III.   Conclusion

For all of the reasons given, the defendants respectfully request that their motion
be granted, and that judgment be entered in their favor on all claims asserted by Plaintiff
in this action.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/
_____

LAURA MULLALLY
Assistant Attorney General
Bar no. 28145
Department of Public Safety and
  Correctional Services
115 Sudbrook Lane, Suite A
Pikesville, MD  21209
410-585-3449

Attorneys for defendants
Maynard, Tuthill, Moore, Porter,
and Ffowlkes