**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **LARRY WASHINGTON, # 407-448** | |
| **Plaintiff,** | |
| **v.** | |
| **GARY D. MAYNARD,** *et al.* | **Civil Action No.:  GLR-13-03767** |
| **Defendants.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR
SUMMARY JUDGMENT OF THE SECOND AMENDED COMPLAINT**

Plaintiff Larry D. Washington ("Mr. Washington"), by his attorneys, hereby submits this Opposition to Defendants Gary D. Maynard, Marion Tuthill, Correctional Captain Karen Moore, Sergeant Michael Porter, and Correctional Officer Andrene Ffowlkes's (collectively, "Defendants'") March 23, 2015 Motion To Dismiss And/Or For Summary Judgment Of The Second Amended Complaint, and states as follows:

## I.  INTRODUCTION

This is a civil action for damages under 42 U.S.C. § 1983[1] arising from the life-threatening attack that Mr. Washington suffered on May 31, 2012, while incarcerated as a pretrial detainee[2] at

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

Baltimore City Detention Center ("B.C.D.C." or the "detention center"), under the presumed protection of Defendants, all of whom were at the time employed by the Maryland Department of Public Safety and Correctional Services.   While under the protection of Defendants, Mr. Washington was physically attacked on two separate occasions by fellow detainee Brandon Dovi ("Inmate Dovi") and other members of the Black Guerilla Family (the "BGF"), a prison gang that for years maintained a network of criminal operations within B.C.D.C. with the complicity and support of many of the facility's employees, including correctional officers.   After the first attack—which was retaliation for Mr. Washington's refusal to transport contraband between incarcerated members of the BGF and the correctional officers with whom they were working—Inmate Dovi, whom Defendants later positively identified as Mr. Washington's primary assailant, was placed in punitive segregation.   Mr. Washington was moved to another housing unit for his own protection. *See generally* ECF No. 36 (Second Amended Complaint).

When Inmate Dovi was released from segregation, however, B.C.D.C. officials chose to place him mere feet from Mr. Washington—the two men now shared a cell block on B-section.   After he was placed on B-section with Mr. Washington, Inmate Dovi and other members of the BGF began threatening Mr. Washington with physical violence, and even death.   Mr. Washington reported these threats both orally and in writing to Defendants on numerous occasions.   Yet Mr. Washington was repeatedly told by Defendants that despite the substantial risk that Inmate Dovi posed to his health and safety—and despite the fact that they *knew of* this risk—Mr. Washington's simple request for relocation to another housing unit could not be achieved.   On the morning of May 31, 2012, a correctional officer

---

[2] "A failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eight Amendment claim brought by a convicted prisoner." *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *see also Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992).

unlocked the door to Mr. Washington's cell and granted Inmate Dovi and other members of the BGF

entrance.  The attack was swift and brutal, and left Mr. Washington bruised and bloody on the floor of

his cell after having been beaten, kicked, and stabbed in the eye.  Mr. Washington endured serious

bodily harm in the May 31, 2012 attack—including the loss of his left eye, which was so badly damaged

that it required surgical removal at Johns Hopkins' Wilmer Eye Institute. *Id.*

As a result of the harm he suffered in the BGF's second attack, Mr. Washington filed an initial

*pro se* Complaint (the "Original Complaint") and Motion and Affidavit for Leave to Proceed *In Forma*

*Pauperis* on December 13, 2013. ECF Nos. 1 and 2.   The Honorable George L. Russell, III,

provisionally granted the latter on January 6, 2014, and Defendants[3] filed an initial Motion to Dismiss

on March 6, 2014. ECF Nos. 3 and 6.  Mr. Washington submitted a *pro se* Declaration in Opposition to

Defendants' Motion to Dismiss on March 20, 2014, along with a Motion for Counsel, and this Court

granted the latter and denied Defendants' first Motion to Dismiss on April 3, 2014. ECF Nos. 9, 8, and

10.  Mr. Washington, through his attorneys, submitted a first Amended Complaint on July 3, 2014, and

Defendants filed a second Motion to Dismiss on July 15, 2015. ECF Nos. 14, 16, and 16-1.

---

[3] For purposes of clarity, this Opposition to Defendants' Motion to Dismiss will refer to the defendants named in the Motion to Dismiss at issue as the "Defendants."  Defendants Sergeant Beverley, Sergeant Porter, Officer Pfowlkes, and Officer Johnson (collectively, the "Additional Defendants") were added as parties to the present civil action in the July 2, 2014 Amended Complaint. ECF No. 14, ¶¶ 15-18.  The first names, and thus the complete identities, of the Additional Defendants remained unknown pending investigation by B.C.D.C. and the Maryland Department of Public Safety and Correctional Services.  This investigation was completed prior to March 18, 2015, when Assistant Attorney General Laura Mullally entered an appearance on behalf of Sergeant Michael Porter and Correctional Officer Andrene Ffowlkes (whose surname was misspelled in previous filings as "Pfowlkes"). ECF No. 38.  Pending receipt of this critical information, Mr. Washington sought and obtained the consent of counsel for Defendants to amend the complaint pursuant to Local Rule 103.6, and filed a Second Amended Complaint on March 3, 2015. ECF No. 36.  In addition to the Defendants mentioned herein, the Second Amended Complaint includes as defendants Shavella Miles, former Chief of Security at B.C.D.C., and Sergeant Anika Beverley, a former correctional sergeant at B.C.D.C., neither of whom the Office of the Attorney General is currently representing. ECF No. 36, ¶¶ 16, 18.

The Motion to Dismiss filed by Defendants on July 15, 2014, is—tellingly—largely a retread of the Motion to Dismiss filed on March 6, 2014. ECF Nos. 16-1, 6.  In their initial Motion to Dismiss, Defendants argued that they had no personal involvement giving rise to liability under 42 U.S.C § 1983; in their second Motion to Dismiss, they put forward the same argument in virtually unaltered prose. This Court mooted Defendants' second Motion to Dismiss after Mr. Washington filed a Motion for Leave to File Second Amended Complaint and the Second Amended Complaint itself on February 27, 2015. ECF Nos. 34-37.

Mr. Washington brought this lawsuit to seek redress for the wrongs inflicted upon him as a result of Defendants' deliberate indifference and reckless disregard for his health and safety, made plain when they ignored his repeated requests following the first attack by the BGF to be relocated to a housing unit in which he would not be in the presence of Inmate Dovi, a man who had brutally attacked him and threatened his life.  Defendants knew of and disregarded the excessive risk to Mr. Washington's health and safety posed by Inmate Dovi.   Mr. Washington, who is fifty-five years old and currently incarcerated at Roxbury Correctional Institution, will be partially blind for the rest of his life.  As a result of the violent loss of his left eye and the multiple attacks he endured at the behest of a dangerous prison gang while under Defendants' care and supervision, Mr. Washington suffers, and will continue to suffer, physical and psychological trauma that he must manage with prescription medication and therapy.

Defendants have for the third time moved to dismiss Mr. Washington's claims against them in a Motion To Dismiss And/Or For Summary Judgment Of The Second Amended Complaint ("Third Motion to Dismiss") filed on March 23, 2015. ECF Nos. 41, 41-1.  Summary judgment is inappropriate at this stage of the proceedings, however, because there are material facts in dispute regarding

Defendants' culpability for permitting two brutal attacks on Mr. Washington, and because Mr. Washington should be permitted to take discovery as a means of gathering further information in support of his claims.  Moreover, Defendants are not entitled to the entry of judgment as a matter of law, because Mr. Washington has adequately pleaded all claims in his Second Amended Complaint.

For the reasons set forth below, Defendants' arguments in support of their Third Motion to Dismiss are unavailing, and the Third Motion to Dismiss should be denied.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007).

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) "test[s] the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." Wright & Miller, Federal Practice and Procedure Civil 3d § 1356 at 354 (2010) (citations omitted).

In considering a motion to dismiss, federal courts are to construe the pleadings in the light most favorable to the plaintiff, assume the truth of all well-pleaded allegations, and give the plaintiff the benefit of all reasonable inferences that can be drawn from the pleadings. *Id.* at 417 (citations omitted). At this stage in the proceedings, therefore, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*,

176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

Finally, **special care is required in federal civil rights cases**.  When a defendant seeks to dismiss a civil rights claim, the Court "must be especially solicitous of the wrongs alleged" and "must not dismiss the claim unless it appears **to a certainty** that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### B.  Motion for Summary Judgment

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Terry's Floor Fashions v. Burlington Indus.,* 763 F.2d 604, 610 (4th Cir.1985).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact and providing the court with sufficient grounds for summary judgment.

In ruling on a motion for summary judgment, the court must view the facts, including all reasonable inferences drawn therefrom, in a light most favorable to the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.  If there is a conflict between the inferences that may be drawn from the evidence presented, summary judgment must be denied. *PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 870-71 (D. Md. 1994); *see also Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979) (stating that summary judgment is inappropriate if the parties disagree regarding the inferences to be drawn from the facts).

### III.    ARGUMENT

**A.  <u>Mr. Washington Did Not Fail To Exhaust His Administrative Remedies Under The Prison Reform Litigation Act, Because These Remedies Were Unavailable To Him, and Defendants Are Therefore Estopped From Asserting This Defense</u>**

In their Third Motion to Dismiss, Defendants claim that they are entitled to summary judgment because Mr. Washington failed to exhaust his administrative remedies under the Prison Reform Litigation Act (the "PLRA"), 42 U.S.C. § 1997e(a) (2000 ed.), by filing the instant suit rather than applying for relief through the internal grievance procedures set out in Division of Pretrial Detention and Services Directive 180-1.   What Defendants fail to mention, however, is that while the exhaustion requirement under the PLRA is mandatory, it is ***not*** absolute.   Under the plain text of the PLRA, a prisoner need only exhaust "such administrative remedies ***as are available***" to him before filing suit in federal court. 42 U.S.C. § 1997e(a) (emphasis added). *See also Haskins v. Hawk*, 2013 BL 84511, at *8 (D. Md. Mar. 29, 2013).   Moreover, administrative remedies must be available to the prisoner, and courts are "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).   The Fourth Circuit has addressed the meaning of "available" remedies: "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Pinkett v. Crowder*, 2014 BL 199578, at *10 (D. Md. July 18, 2014).

All circuits that have decided the question, including the Fourth Circuit, have held that the PLRA exhaustion requirement is not jurisdictional, and almost all have held that courts therefore can apply doctrines of waiver and estoppel to excuse failure to exhaust. *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677-80 (4th Cir. 2005) (rejecting the argument that exhaustion is "not

forfeitable.").  In considering responses to the affirmative defense of non-exhaustion, courts ought to consider first any argument that administrative remedies were not available to a plaintiff. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004).  This is consistent with the United States Supreme Court's observation, in the context of the administrative exhaustion requirement of Title VII of the Civil Rights Act of 1964, that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." *Love v. Pullman*, 404 U.S. 522, 526 (1972).  The Title VII requirement is analogous to the PLRA's, because both involve individuals' claims of civil rights violations, and both involve resort to the varying practices of state agencies. *See Thomas v. Woolum*, 337 F.3d 720, 727-28 (6th Cir. 2003).  Federal courts have used Title VII law as an interpretive guide to the PLRA in a number of cases.  *See, e.g.*, *id.*; *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir.), *cert. denied*, 540 U.S. 810 (2003).

Mr. Washington, a pretrial detainee who had recently been subjected to two vicious attacks by a prison gang that effectively controlled the facility in which he was housed at the time, was a layman unassisted by trained lawyers when he initiated the present civil action.  As he alleges in his December 13, 2013 Original Complaint, which he filed with this Court *pro se*, he "was told that [he] couldn't file a grievance for a personal injury." ECF No. 1 at 2.  Mr. Washington, through no fault of his own, was prevented from exhausting administrative remedies under the PLRA.  He should not be penalized for heeding the directives of B.C.D.C. personnel.  Indeed, as a pretrial detainee under the care of B.C.D.C. personnel and their representatives and agents, and subject to their desires and whims, one could argue that he had no choice but to do so.

        **i. A Remedy Was Unavailable To Mr. Washington Because He Was Explicitly Told That He Could Not File A Grievance For A Personal Injury Suit.**

The PLRA requires exhaustion of remedies that are "available." 42 U.S.C. § 1997e(a).  Under *Booth v. Churner*, a remedy is presumptively available unless it "lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 32 U.S. 731, 736 (2001). Remedies may be deemed unavailable where there is no "clear route" for challenging the conduct in question; where prisoners cannot decipher what remedy is available for their problems; or where a remedy is made unavailable by the acts or omissions of prison personnel.  *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005); *Osborne v. Coleman*, 2002 WL 32818913, at \*4-\*5 (E.D. Va. Sept. 9, 2002), *aff'd*, 90 F. App'x 30 (4th Cir. 2004) (holding that an allegation that the plaintiff was threatened to dissuade him from pursuing grievances created a factual issue barring summary judgment as to failure to exhaust).  If detainees and prisoners cannot tell what (if any) remedy is available for their problems, or if they receive misdirection from prison personnel, they cannot and should not be held responsible for failing to exhaust administrative remedies under the PLRA.  Such a finding would permit, and even encourage, abuse of prison procedures by the very persons under whose care prisoners are placed.

Courts have specifically held that remedies under the PLRA are "unavailable" to plaintiffs where prisoners attempting to address their grievances are obstructed from doing so by prison staff or their representatives, purposefully or otherwise, and where prisoners are misinformed about the operation or availability of remedies under the applicable grievance procedure. *See, e.g.*, *Howard v. Hill*, 2005 WL 3105832, at \*1, 156 F. App'x 886 (9th Cir., Nov. 21, 2005) (unpublished) (holding that a prisoner who had been told he would not receive responses to his grievances had no remedy available); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("We believe that a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a). . ."); *Beltran v. O'Mara*, 405 F.Supp.2d 140, 154 (D.N.H. 2005) (holding that where a grievance was rejected on the ground that

incidents which were the subject of disciplinary proceedings could not be grieved, "a reasonable inmate in [the plaintiff's] position" would believe the grievance process was not an available remedy and his claims should be raised in the disciplinary process), *on reconsideration*, 2006 WL 240558 (D.N.H., Jan. 31, 2006); *Wheeler v. Goord*, 2005 WL 2180451, at *6 (N.D.N.Y., Aug. 29, 2005) (holding that a prisoner who was erroneously told to "write to Sergeant Coffee" to grieve raised an issue whether remedies were available); *Willis v. Smith*, 2005 WL 550528, at *13 (N.D. Iowa, Feb. 28, 2005) (declining to dismiss where a plaintiff relied on the statement of a prison official that the written grievance policy was unavailable).

Mr. Washington indicated in his Original Complaint ***that he did, in fact, attempt to file a grievance according to the proper procedure***, but that he "was told that [he] couldn't file a grievance for a personal injury." ECF No. 1, at 2. Mr. Washington—a pretrial detainee who had just lost an eye due to Defendants' misconduct, and who had survived not one but two potentially fatal attacks at the hands of a notorious prison gang—should not be penalized for following the dictates of the unnamed official who told him that he could not file a grievance. In *Davis v. Milwaukee County*, 225 F.Supp.2d 967, 976 (E.D. Wis. 2002), the court held that a plaintiff had been denied access to courts by defendants' hindering his ability to exhaust, *inter alia*, by telling him that his complaint was "not a grievable situation." Other jurisdictions have reached similar conclusions in situations nearly identical to Mr. Washington's. *See, e.g.*, *Kounelis v. Sherrer*, 2005 WL 2175442, at *7-8 (D. N.J., Sept. 6, 2005) (declining to dismiss for not appealing a grievance where prisoner was told he could not file a grievance because the issue belonged in the disciplinary process or in court); *Martin v. Gold*, 2005 WL 1862116, at *8 (D. Vt., Aug. 4, 2005) (holding that "an inmate who is told that a claim is not grievable is not required to appeal the investigator's determination.").

Defendants include along with their Third Motion to Dismiss Exhibits A1-A6 and B, which purport to show that Mr. Washington failed to exhaust his administrative remedies under the PLRA, but which clearly reveal that Mr. Washington is a conscientious man who knew how to avail himself of B.C.D.C.'s grievance process and did so on more than one occasion. *See* ECF Nos. 41-2-41-9.   Mr. Washington should not suffer a consequence so severe as dismissal of his claims against Defendants because prison personnel misinformed him—perhaps deliberately—of his rights and responsibilities in this particular context.

        1.   **Defendants Are Estopped From Raising The Defense Of Failure To Exhaust Administrative Remedies Under The PLRA Because Mr. Washington Was Misled By B.C.D.C. Personnel.**

Defendants may be estopped from raising a defense of non-exhaustion under the PLRA based on the same facts that support an argument of unavailability: namely, the misleading of prisoners by prison staff about the availability of remedies. *See Rivera v. Goord*, 2003 WL 1700518, at *7 (S.D.N.Y., Mar. 28, 2003) (stating that prison officials may be estopped from asserting non-exhaustion where a prisoner has been told by officials that his complaint is not a "grievance matter"); *Heath v. Saddlemire*, 2002 WL 31242204, at *5 (N.D.N.Y., Oct. 7, 2002) (holding that reliance on officials' representations as to proper procedure estops prison officials from claiming non-exhaustion as to a prisoner who heeded the representations); *Simpson v. Gallant*, 223 F.Supp.2d 286, 292 (D. Me. 2002) (holding that prison officials who stated that the plaintiff's problem was not grievable were estopped from claiming non-exhaustion), *aff'd*, 62 Fed. Appx. 368, 2003 WL 21026723 (1st Cir. 2003).

Mr. Washington reasonably relied upon the statement made by the unnamed B.C.D.C. staff member or correctional officer who misled him by telling him that he could not file a grievance for

"personal injury."  Defendants should not be permitted to mislead potential plaintiffs into actions that they can later take advantage of as affirmative defenses as a means of disclaiming liability.

> **ii. Defendants' Affirmative Defense Of Failure To Exhaust Administrative Remedies Should Be Waived, As It Was Not Raised In Two Previous Motions To Dismiss.**

As an affirmative defense, exhaustion may be waived by failure to raise it in a timely manner. *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 679-80 (4th Cir.2005).  Courts have held that the defense of exhaustion is waived where defendants failed to include it in a motion to dismiss, or failed to raise it until a summary judgment motion. *See, e.g.*, *Markay v. Yee*, 2005 WL 3555473, at *8 (E.D. Cal., Dec. 23, 2005) (holding the defense of non-exhaustion waived where defendants did not include it in their motion to dismiss); *Mayoral v. Illinois Dept. of Corrections*, 2002 WL 31324070, at *1 (N.D. Ill., Oct. 17, 2002) (finding waiver where exhaustion was not raised until a summary judgment motion); *Goodson v. Sedlack*, 212 F.Supp.2d 255, 256 n.1 (S.D.N.Y. 2002) (finding waiver where exhaustion was not raised in or before a summary judgment motion).

Here, Defendants attempt to dismiss Mr. Washington's claim in its entirety based on his alleged failure to exhaust administrative remedies under the PLRA.  *See generally* ECF No. 41, 41-1.  Defendants, however, failed to raise this affirmative defense in the *two* previous Motions to Dismiss filed in this case. ECF Nos. 6, 16.  Although a Second Amended Complaint was filed in the interim, necessitating a revised Motion to Dismiss, none of the operative facts changed.  This defense was fully available to Defendants during their previous Motions to Dismiss, and yet they did not avail themselves of it.  This failure to raise non-exhaustion as an affirmative defense at an appropriate stage of the instant proceedings constitutes grounds for waiver, and as such, Defendants have waived this defense.

**B.  Defendants Knew Of And Disregarded An Obvious, Excessive Risk To Mr. Washington's Health And Safety, and Mr. Washington Alleged As Much In His Second Amended Complaint**

In their Third Motion to Dismiss, Defendants also broadly allege that Mr. Washington failed to properly plead his claims against Defendants Maynard, Tuthill, and Moore.  This is simply not the case, however, as will be discussed in greater detail below.

A pretrial detainee's right to be free from a prison official's deliberate indifference to serious assaults by other inmates was clearly established as of the BGF's May 31, 2012 attack on Mr. Washington. *McFadden v. Allison*, Civ. No. WDQ-08-0154, 2009 WL 3247358, at *5 (D. Md. Oct. 9, 2009) (holding that a pretrial detainee's "rights to be free from prison officials' deliberate indifference to . . . assaults by other inmates" was "clearly established as of the July 5, 2006 attack.").  The Fourth Circuit has likewise held that "[a] failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eight Amendment claim brought by a convicted prisoner." *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *see also Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992).  The "Eighth Amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to a specific known risk of such harm." *Pressley v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).  In order to prevail on an Eighth Amendment claim for failure to protect from violence, Mr. Washington must establish that the Defendants—individuals who were subject to a constitutional mandate to keep him free from harm, including assault at the hands of fellow prisoners—exhibited "deliberate or callous indifference" to a "specific known risk of harm." *Id.*  Despite Defendants' conclusory claims to the contrary, Mr. Washington indisputably alleges as much in his Second Amended Complaint. *See, e.g.*, ECF No. 36, Count II, ¶¶ 60-67.

Defendants' argument that Mr. Washington's claims fail because he does not allege the personal involvement of Defendants Maynard, Tuthill, and Moore is likewise inapposite, and lies in stark contrast to the allegations of the Second Amended Complaint itself, and to the balancing test laid out by the United States Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer v. Brennan*, the court held that prison officials may be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement where the official knows of and disregards an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837 (citations omitted); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-03 (4th Cir. 2004).  Under *Farmer*:

> Prison conditions may be restrictive and even harsh***, but gratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective***, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

511 U.S. at 833-34 (citations omitted) (emphasis supplied).

Contrary to Defendants' contentions in their Third Motion to Dismiss, Mr. Washington did indeed plead facts sufficient to state a claim for Defendants' violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  For example, in Count I of the Second Amended Complaint, in which Mr. Washington alleges violation of his Eighth Amendment rights under 42 U.S.C. § 1983, Mr. Washington alleges that Defendants had actual knowledge that Inmate Dovi continued to reside on B-section with him despite Mr. Washington's repeated pleas to be relocated, and

that thus, Defendants knew of "the very real danger this posed to Mr. Washington" and "were aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed for Mr. Washington, and Defendants drew this inference" and yet "chose not to protect Mr. Washington." ECF No. 36, ¶¶ 49-59. Mr. Washington does indeed allege that Defendants Tuthill and Moore had personal knowledge of and involvement in the harm he suffered at the hands of the BGF. *Id.* at ¶¶ 42-44. Defendant Moore, who was present during the BGF's first attack on Mr. Washington, positively identified Inmate Dovi as his principal assailant, and Mr. Washington wrote to her specifically pleading to be relocated for his own safety. *Id.* at ¶¶ 38-39, 42, 44. Likewise, Mr. Washington wrote to Defendant Tuthill, describing his dire situation and pleading to be relocated. *Id.* at ¶¶ 42-44. None of these Defendants could have done anything but draw the inference that Mr. Washington's health and safety faced an excessive risk—Mr. Washington told them so, in plain terms. Mr. Washington thus clearly alleged that Defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." *Farmer*, 511 U.S. at 837. Mr. Washington included in his Second Amended Complaint identical language in Count II, which alleges violation of his Fourteenth Amendment rights under 42 U.S.C. § 1983. ECF No. 36, ¶¶ 60-67.

Although Mr. Washington does not currently possess information sufficient to state that Defendant Maynard knew of and disregarded the dire threat to his health and safety posed by Inmate Dovi and the BGF, this is not to say that Defendant Maynard had no knowledge of the BGF's domain over B.C.D.C. or even of Mr. Washington's own plight. Mr. Washington should be permitted to take discovery to gather information that may support his claims. Defendant Maynard, like Defendants Tuthill and Moore, may have been aware of the substantial and pervasive risk of serious harm that the

BGF posed to Mr. Washington, and like the other Defendants, may have acted with deliberate indifference.

> **i. Mr. Washington Successfully States A Claim For Supervisory Liability, As He Showed That (A) He Faced An Unreasonable Risk Of Harm From the BGF, And (B) Defendants Remained Deliberately Indifferent To His Plight.**

The Eighth and Fourteenth Amendments' deliberate indifference standard protects an inmate where it is shown that prison officials either intended for the inmate to be harmed or knowingly disregarded an obvious threat to such an extent that one can only assume the officials intended the threat to be carried out.  A prison official is liable under this standard if he or she knew that an inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to avoid it. *See Farmer*, 511 U.S. at 825; *see also Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (finding that the deliberate indifference standard applied to prison supervisors if "after learning of the violation through a report or appeal . . . [the supervisor] failed to remedy the wrong . . . created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue . . . [or] was grossly negligent in managing subordinates who caused the unlawful . . . event." (citations omitted); *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993) (applying the deliberate indifference standard to a claim based on a prison official's failure to act); *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) ("[S]upervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act."); *Vaughan v. Ricketts*, 859 F. 2d 736, 741 (9th Cir. 1988) ("[P]rison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim."); *Madrid v. Gomez*, 889 F. Supp. 1146, 1249 (N.D. Cal. 1995) (noting that supervisors may be liable for "conduct

of a completely different nature: abdicating their duty to supervise and monitor the use of force and deliberately permitting a pattern of excessive force to develop and persist.").

In the Second Amended Complaint, Mr. Washington clearly pleads that Defendants acted with deliberate indifference when they ignored his entreaties to be relocated away from Inmate Dovi, who had threatened his life.  Mr. Washington alleges that Defendants knew of the BGF's monopoly within B.C.D.C., of the complicity and cooperation of correctional officers and other B.C.D.C. personnel in the BGF's criminal schemes, and of the BGF's all-too-common practice of reprisal attacks against other inmates. ECF No. 36, ¶¶ 29-33, 40-44.  Mr. Washington also alleges that Defendants knew of the BGF's first attack on him, Inmate Dovi's presence within B-section, and the BGF's continued threats against him. *Id.*  In short, Mr. Washington establishes that there existed within B.C.D.C. "a history of widespread abuse," where a dangerous gang was permitted to run rampant throughout the facility, and that Defendants' failure to heed his warnings that he would be attacked *a second time* by this gang—far from an "isolated incident"—constitutes deliberate indifference, and therefore grounds to establish supervisory liability. *Wellington v. Daniels*, 717 F.2d 832, 936 (4th Cir. 1983).  If a situation in which a supervisor receives and ignores warnings from an inmate that he will be injured, or even killed, by members of a known prison gang with a personal vendetta against him does not constitute deliberate indifference, it taxes the imagination to conceive of what does.

### C. Defendants Are Not Entitled To Governmental Immunity For Their Grossly Negligent Behavior

Defendants are liable for the injuries suffered by Mr. Washington, because Mr. Washington's constitutional right to be free from cruel and unusual punishment—including his right to be free from "physical harm at the hands of fellow inmates"—was violated when Defendants, under color of law, did not relocate him to another housing unit despite his repeated requests. *Pressley v. Hutto*, 816 F.2d 977,

979 (4th Cir. 1987); 42 U.S.C § 1983.  Although Defendants attempt to disclaim responsibility for their actions in their Third Motion to Dismiss, contending that they are entitled to common law public official immunity and governmental immunity under the Maryland Tort Claims Act, Md. Code Ann. State Gov't § 12-101, *et seq.*, for tortious conduct committed within the scope of their public duties, this protection is not afforded to state officials who act "with malice or gross negligence." *Id.*; Md. Code Ann. Courts & Jud. Proceedings § 5-522(b).  Under common law public official immunity, likewise, Defendants argue that they should not be held liable "for damages resulting from mere negligence." *Livesay v. Baltimore County*, 384 Md. 1, 13 (2004) (quoting *Carder v. Steiner*, 225 Md. 271, 275-76 (1961)).  Under the allegations of the Second Amended Complaint, however, Defendants acted with more than "mere negligence"—they acted with gross negligence, deliberately placing Mr. Washington's life in grave danger.

Mr. Washington clearly plead in his Second Amended Complaint that Defendants acted with gross negligence, or "***a wanton or reckless disregard for human life or the rights of others***." *Wells v. State*, 100 Md. App. 693, 703 (1994) (citations and quotations omitted).  See ECF No. 36, ¶¶ 74-78, 79-85 (Count IV, for Negligence (Against All Defendants), and Count V, for Negligent Hiring, Supervision, and Retention (Against Defendants Maynard, Tuthill, and Moore), respectively).  In the Second Amended Complaint, Mr. Washington describes a situation in which he essentially begged for his life to Defendants, who knew of the harm that had befallen him at the hands of the BGF and of the harm that would befall him without their intervention.  Defendants chose to ignore Mr. Washington's pleas, however—which would have amounted to a death sentence had Mr. Washington not lived through his second attack.  This behavior clearly exhibits "a wanton or reckless disregard for human life or the rights of others" on the part of Defendants. *Wells v. State*, 100 Md. App. at 703.

**i. Mr. Washington Suffered Severe Physical, Emotional, and Psychological Trauma Because of the Loss of His Left Eye, and Clearly Pleaded As Much.**

Finally, Defendants attempt to dismiss Count VI of the Second Amended Complaint, which alleges Intentional Infliction of Emotional Distress, on the grounds that Defendants did not act recklessly or outrageously when they failed to heed Mr. Washington's repeated pleas to be relocated away from the inmate who had already attacked him once before, and who threatened his life.  To plead the tort of intentional infliction of emotional distress, Mr. Washington would have had to allege that Defendants' conduct was of the type that "the average member of the community" would perceive as "a complete denial of the plaintiff's dignity as a person." *Dick v. Mercantile Safe*, 63 Md. App. 270, 276 (1985).  Defendants likewise contend that Mr. Washington has failed to allege that he suffered a "severely disabling emotional response" as a result of their reckless and wanton behavior. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2000).

In his Second Amended Complaint, however, Mr. Washington alleged that a brutal and dangerous prison gang had overrun B.C.D.C. by the time he was an inmate there in 2012; that Defendants knew of this fact, and were, perhaps, complicit in the illegal activities of the BGF, which included assault and murder; that Defendants knew that Inmate Dovi, a member of the BGF, attacked Mr. Washington once, and received a segregation sentence for it; that Inmate Dovi was placed on Mr. Washington's cell block when he was released; that Inmate Dovi threatened Mr. Washington and told him in no uncertain terms that the BGF would kill him; that Mr. Washington pleaded to Defendants to be relocated away from Inmate Dovi on numerous occasions, but that Defendants told him that they could not help him—despite the fact that they had relocated him for similar reasons on a previous occasion; that a correctional officer opened the door to Mr. Washington's cell one morning, allowing

Inmate Dovi and the BGF to enter and attack him again; that Mr. Washington was severely beaten and stabbed in the eye; and that as a result of this Mr. Washington lost his left eye, and is losing sight in his right eye as well due to the strain his partial blindness places on vision. *See, e.g.*, ECF No. 36, ¶¶ 3-9, 28-33, 34-48.  Mr. Washington alleges in his Second Amended Complaint that he must take prescription medication to manage his panic attacks as a result of Defendants' failure to protect him from harm, as well as to manage the near-constant pain he faces, and that he must attend therapy. *Id.* at ¶¶ 48, 57-59, 65-67, 86-90.  In short, Mr. Washington's life has been permanently altered because of Defendants' deliberate acts or omissions.  Their collective failure to protect Mr. Washington, and the trauma he has suffered as a result, "strike[s] to the very core of one's being." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60 (1986).  Mr. Washington sufficiently pleaded intentional infliction of emotional distress in his Second Amended Complaint.

WHEREFORE, for the reasons set forth above, Mr. Washington respectfully requests that this Court deny Defendants Gary D. Maynard, Marion Tuthill, Correctional Captain Karen Moore, Sergeant Michael Porter, and Correctional Officer Andrene Ffowlkes's Motion To Dismiss And/Or For Summary Judgment Of The Second Amended Complaint.

Dated: April 15, 2015                              Respectfully submitted,

                                                  /s/   Brett Ingerman

Brett Ingerman
Maryland Federal Bar Number 23037
Keelan F. Diana
Maryland Federal Bar Number 19100
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-3000
Fax: (410) 580-3001
brett.ingerman@dlapiper.com
keelan.diana@dlapiper.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April, 2015, a true and correct copy of the foregoing Opposition to Defendants' Motion To Dismiss And/Or For Summary Judgment Of The Second Amended Complaint was served through the Court's electronic filing system to:

> Laura Mullally
> Maryland Federal Bar Number 28145
> Department of Public Safety
> and Correctional Services
> 115 Sudbrook Lane, Suite A
> Pikesville, Maryland 21208
> Telephone: (410) 585-3449
> Email: lmullally@dpscs.state.md.us
>
> *Attorneys for Defendants Gary D. Maynard, Marion Tuthill, Correctional Captain Karen Moore, Sergeant Michael Porter, and Correctional Officer Andrene Ffowlkes*
>
> /s/ Keelan F. Diana
> Keelan F. Diana